IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MOUNTAINEER DOUGH, LLC**
**Employer Below, Petitioner**

FILED
**November 1, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-86**        (JCN: 2022017301)

**DAVID MILANO,**
**Claimant Below, Respondent**

### MEMORANDUM DECISION

Petitioner Mountaineer Dough, LLC ("Mountaineer") appeals the February 27, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent David Milano filed a response.[1] Mountaineer did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and holding the claim compensable for cervical radiculopathy.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the Board's decision is reversed.

In the early morning hours of February 20, 2022, Mr. Milano, a general manager for Mountaineer, was held at gunpoint during a robbery. Security footage shows one of the robbers push Mr. Milano in the chest, causing him to take a few steps backward and bump into a doorframe. The robbers directed Mr. Milano into an office where they eventually instructed him to sit on the floor and bound his hands and feet with shirts and a cord.

Mr. Milano completed an Employees' and Physicians' Report of Occupational Injury on February 22, 2022, indicating that he injured his neck and back during the robbery. The physicians' section of the form provided a diagnosis of radiculopathy and indicated that the injury was to the cervical spine. Mr. Milano sought treatment at MedExpress on February 23, 2022, and complained of numbness, pain, and weakness in his upper extremities. The treatment note indicated the following about Mr. Milano's

---

[1] Mountaineer is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Milano is represented by J. Thomas Greene Jr., Esq., and T. Colin Greene, Esq.

physical examination: full range of motion in his neck, but that it was painful; midline spinous tenderness in the neck; limited strength against resistance during abduction of the left hand due to pain; and diminished grip strength in his hands. The treating nurse practitioner diagnosed Mr. Milano with cervical radiculopathy and generalized muscle weakness and recommended that he follow up at an emergency department.

Later that same day, Mr. Milano presented to the emergency department of J.W. Ruby Memorial Hospital and reported that he had been assaulted during a robbery and was pushed, causing him to hit his head and neck on the doorframe. Mr. Milano further reported that he was "roughed up" and "thrown around." Mr. Milano reported soreness, pain with movement, nausea, left-sided stiffness, numbness in the right arm, and possibly blurred vision. Mr. Milano underwent several CT scans and an MRI, all of which were unremarkable/normal. Upon examination, the treating physician noted full range of motion in Mr. Milano's neck and arms, but indicated notable weakness in the left upper extremity when compared with the right. The treating physician noted that all of the imaging studies were normal and diagnosed neck pain, left arm weakness, left leg weakness, and left-sided numbness. An orthopedic consult indicated no strength, motor, or neurological deficits.

Mr. Milano also underwent a neurological evaluation, wherein he reported that he was "tossed around, picked up and thrown against [a] wall." The exam was normal except for an inconsistent pinprick exam in the left lower extremity at L-4 and L-5. On February 24, 2022, Mr. Milano returned to MedExpress with complaints of neck pain. Mr. Milano reported that he had been told he had a pinched nerve, and MedExpress referred him to physical therapy.

On March 1, 2022, Mr. Milano underwent an EMG study. The report indicated as follows: "This is a normal study. There is no electrodiagnostic evidence of a left lumbosacral radiculopathy or plexopathy. There is no electrodiagnostic evidence suggestive of a left brachial plexopathy or a left cervical radiculopathy. Clinical correlation is advised."

Randall L. Short, D.O., performed a physician review and issued a report dated April 4, 2022. Dr. Short noted that he watched the security camera footage and reviewed the medical records and opined that the security camera footage "does not identify that an injury occurred to the cervical spine, lumbar spine, bilateral upper extremities, or bilateral lower extremities" and that "[t]he objective medical findings upon physical exam as well as diagnostic studies do not support an injury to the spine as well as extremities." Based on Dr. Short's report, the claim administrator denied the claim by order dated April 5, 2022.

On August 4, 2022, Mr. Milano testified via deposition regarding the robbery and his purported injury. Mr. Milano stated that he "was thrown up against the door frame and hit [his] back and neck." According to Mr. Milano, he suffered from neck and lower back pain from "impinged nerves in [his] left arm and left leg;" incontinence; difficulty standing,

2

lifting, and extending his arms over his head; and very limited grip strength and limited tactility through his left hand. Mr. Milano stated that he had no issues or symptoms in his back, neck, arm, or leg prior to the alleged injury, and that he had not been able to return to work since the incident.

On October 31, 2022, Samuel C. Wordeman, Ph.D., a biomechanist, authored a report following his review of the matter.[2] Dr. Wordeman explained his background, including his education and his experience in peer-reviewing the following scientific journals: Clinical Biomechanics; The American Journal of Sports Medicine; The Knee; The Orthopedic Journal of Sports Medicine; and The Journal of Biomechanics. Dr. Wordeman also stated that he has taught undergraduate and graduate level courses on tissue biomechanics and human musculoskeletal dynamics; designed and implemented experimental and computational research protocols to investigate the effects of human kinematics and the kinetics on the risk of injury under dynamic loading conditions; and completed a doctoral dissertation on the development and validation of subject-specific analyses of anatomical, biomechanical, and neuromuscular risk factors for lower extremity injuries.

Dr. Wordeman explained that he performed a "kinematic and biomechanical analysis" to assess Mr. Milano's body motion, the forces and accelerations his body experienced, and the likelihood of injury occurring to his extremities or spine resulting from the work-related incident. He explained that if "no injury mechanism was created, or the forces applied were insufficient to damage the relevant tissue, causality between the subject incident, and an injury cannot be established." Regarding Mr. Milano's alleged injury, Dr. Wordeman calculated that Mr. Milano's body had a maximum velocity of 2.4 to 3.4 miles per hour when it contacted the doorframe. He opined that "[t]here is no reason to expect that the contact between Mr. Milano's body and the door jamb [as seen] in the video caused or exacerbated any injury to his cervical, thoracic, or lumbar spine" and that Mr. Milano's "gross kinematic response to being pushed, and to contacting the door frame did not demonstrate any motion . . . beyond a normal physiological range." In sum, Dr. Wordeman concluded that "the subject incident did not create any injury mechanism to account for the reported complaints of Mr. Milano."

By order dated February 27, 2023, the Board reversed the claim administrator's April 5, 2022, order denying the claim and, instead, held the claim compensable for cervical radiculopathy. The Board found it was uncontroverted that a robbery had occurred while Mr. Milano was working. As such, the issue, the Board opined, became whether Mr. Milano sustained an injury during the robbery. While Dr. Wordeman indicated that an injury could not have occurred given the mechanics of the assault, the Board found that

_____

[2] In his report, Dr. Wordeman refers to a recorded statement taken from Mr. Milano on March 24, 2022. The transcript of this recorded statement was not provided in the appendix record on appeal, but it was submitted into evidence before the Board below.

"medical providers have diagnosed an occupational injury." The Board specifically relied upon the Employees' and Physicians' Report of Occupational Injury, which indicated a diagnosis of cervical radiculopathy, as well as the initial treatment records from MedExpress. The Board acknowledged that an EMG study did not show evidence of left cervical radiculopathy but pointed out that clinical correlation had been advised and that "no medical provider has denied the initial diagnosis of cervical radiculopathy." Lastly, the Board noted Mr. Milano's testimony indicated that he did not have any symptoms prior to the work-related incident and concluded that "[t]he medical evidence and [Mr. Milano's] testimony are reliable and establish that [he] sustained an injury in the course of and resulting from his employment." Relevant to this appeal, the Board noted that it had reviewed two videos of security camera footage submitted by Mountaineer, but made no further findings as to the contents of the video. Mountaineer now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mountaineer argues that the Board erred in holding the claim compensable. Mountaineer contends that although Mr. Milano's claims of being "tossed around," "roughed up," and "slammed" against the wall formed the basis of his cervical radiculopathy diagnosis, the security footage and medical evidence do not corroborate his claims. According to Mountaineer, the security footage shows that Mr. Milano was lightly pushed by one of the robbers, causing him to take one or two steps backward and lightly come into contact with a door jamb. Mountaineer argues that this incident could not have caused the severe injuries claimed by Mr. Milano. Moreover, the CT scans, MRIs, and EMG study performed on Mr. Milano were all normal. Indeed, the EMG study report

4

showed that there was no evidence of cervical radiculopathy. Mountaineer argues that, although the emergency room staff initially diagnosed cervical radiculopathy based on his reports of being "roughed up," they did not have the benefit of reviewing the security footage, and diagnostic testing disproved such a diagnosis. Further, Dr. Short and Dr. Wordeman, both of whom reviewed the security footage, opined that no injury occurred. Mountaineer concludes that the Board's decision is absurd in light of the security footage, Dr. Wordeman's opinions, and the normal diagnostic testing and, as such, should be reversed. We agree.

Upon review, we are firmly convinced that the Board committed clear error in reversing the claim administrator's order and holding the claim compensable for cervical radiculopathy. We first note that the Board's findings of fact regarding the security footage submitted into evidence are entirely inadequate. Other than stating that the videos were reviewed, the Board completely fails to provide any explanation of the videos or its impression of the contents of the videos. This footage is a critical piece of evidence in the claim as it clearly showed the alleged injury, and it warranted more detailed findings than a solitary sentence stating it had been reviewed. Accordingly, we find that the Board's findings of fact are incomplete as they did not include any summarization of the security footage, leading us to conclude that the Board erroneously failed to consider the security footage in rendering its decision on compensability in this claim.

Indeed, upon reviewing the security footage videos, we conclude that reasonable minds could reach only one conclusion—Mr. Milano suffered no injury during the course of the robbery, let alone cervical radiculopathy. The security footage clearly shows that Mr. Milano was lightly pushed, causing his back to come in contact with the door jamb. His movements were slow and showed no indication of recoil, whiplash, or exhibition of pain behavior. In watching the security footage, it is obvious that Mr. Milano's various reports of being grabbed by the neck, roughed up, and thrown around are egregious exaggerations of what occurred during the robbery.

While the Board is correct that the Employees' and Physicians' Report of Occupational Injury and the initial treatment records from MedExpress note a diagnosis of cervical radiculopathy, the medical professionals completing these forms did not have the benefit of reviewing the security footage and were relying on the exaggerated statements taken from Mr. Milano. In contrast, Dr. Short and Dr. Wordeman reviewed the security footage and opined that no injury occurred as a result of Mr. Milano's back coming into contact with the door jamb. Moreover, Mr. Milano underwent CT scans, an MRI, and an EMG study and all were unremarkable and normal. The EMG report specifically indicated that "[t]here is no electrodiagnostic evidence of a left lumbosacral radiculopathy or plexopathy. There is no electrodiagnostic evidence suggestive of a left brachial plexopathy or a left cervical radiculopathy."

When considering the security camera footage in conjunction with the other evidence of record, we conclude that Mr. Milano suffered no injury in the course of and as a result of his employment. Accordingly, we find that the Board's order reversing the claim administrator's order and holding the claim compensable for cervical radiculopathy was clearly wrong. We further emphasize that the Board must summarize the evidence submitted before it in order to make findings of fact and conclusions of law sufficient to afford meaningful appellate review.

Accordingly, based on the foregoing, we reverse the Board's February 27, 2023, order.

Reversed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen


Judge Thomas E. Scarr, not participating

6